UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JIMMY LANCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 16-0040 (RC) |
| | ) |
| GREYHOUND LINES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the Court on Defendant Greyhound Lines Inc.'s Motion to Dismiss Plaintiff's Complaint, ECF No. 11. For the reasons discussed below the motion will be granted in part and denied in part.[1]

### I. BACKGROUND

Greyhound Lines, Inc. ("Greyhound") employed plaintiff as a bus driver. *See* Compl. at 1; Def. Greyhound Lines, Inc.'s Mem. of P. & A., ECF No. 11-1 ("Def.'s Mem.") at 2. Plaintiff "was a member of the bargaining unit whose terms and conditions of employment are governed by a collective bargaining agreement ('CBA') between Greyhound and the Amalgamated Transit Union Local 1700 ('Union')." Def.'s Mem. at 2; *see generally id.*, Ex. 1 (Memorandum of Agreement).

---

[1] Plaintiff's Motion for Summary Judgment, ECF No. 5, is denied because it does not comply in form or in substance with Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h). The Court also denies plaintiff's Motion for Certification, ECF No. 14. This is not a class action, and certification of the class under Federal Rule of Civil Procedure 23 is not warranted. Lastly, because no default has been entered and the parties are not required at this time to meet, confer, or submit a joint report pursuant to Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3, the Court denies "Plaintiff's Motion to Vacate Default; Verified Answer and Duty to Confer on Nondispositive Motions," ECF No. 17.

According to Greyhound, "because of a documented poor safety record," Def.'s Mem. at 4, on July 9, 2015, plaintiff entered into a Last Chance Agreement:

> [Plaintiff's] employment status will be at risk during the next one year from the date of this last chance agreement. Therefore, [plaintiff] must observe all rules of the Driver[']s Rule Book, and comply with all bulletins, directives and policies, and conduct himself in a professional and courteous manner at all times. Failure to adhere to any portion of these instructions . . . will result in [his] discharge . . . regardless of the type or severity of the discipline which would otherwise have been imposed for the infraction involved.

Compl., Ex., ECF No. 1-1 at 1.[2] Plaintiff signed the Last Chance Agreement, as did Mark Taylor on behalf of Greyhound and James Kennedy on behalf of the Union, "acknowledg[ing] that they . . . read and underst[oo]d all conditions noted in the Agreement." *Id.*, Ex. at 1.

On August 13, 2015, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation and discrimination based on his sex occurring between November 1, 2014 and August 13, 2015. *Id.*, Ex. at 6 (Charge of Discrimination No. 570-2015-01678) ("First Charge"). He alleged:

> On or about November/December 2014 my General Manager received a text photo from my phone that an acquaintance of mine had sent him. I also learned that another employee had mentioned the photo in the New York break room. I addressed this gentleman and nothing happened but someone called the union. From this time I have suffered retaliation and sexual orientation discrimination by my employer. My employer has falsely written me up for multiple safety violations and I believe it's to subject me to eventual wrongful termination. On or about July 9, 2015, my employer sent a letter to the union stating that if I get one more safety violation they are going to terminate me.

---

[2] Plaintiff does not designate the exhibits to his complaint, ECF No. 1-1, by number. The Court refers to these exhibits by the page numbers designated by ECF. For example, the Court refers to the July 9, 2015 Last Chance Agreement as "Compl., Ex. at 1."

2

> I believe I have been discriminated against based on my sex (sexual orientation) and in retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id*., Ex. at 6.  The EEOC issued a right-to-sue notice on August 14, 2015.  *Id*., Ex. at 18 (Dismissal and Notice of Rights, EEOC Charge No. 570-2015-01678).  Although the EEOC was "unable to conclude that the information [it] obtained establishes violations of the statutes," it advised plaintiff that, if he chose to file a lawsuit in federal court, he must do so within 90 days of his receipt of the notice.  *Id*., Ex. at 18.

On September 9, 2015, plaintiff met with Mark Taylor, Area City Manager, and Tammy Durham, Operational Supervisor.  *Id*. at 2; *see* Def.'s Mem. at 5.  He described the meeting as follows:

> [On] Wednesday, September 9, 2015, I met with Mark Taylor, [M]anager[,] and Tammy Durham, Operational Supervisor, to talk about the EEOC complaints and why I did not come to them to address this issue. At some point, the manager became hostile, start[ed] yelling at me[] about all these accusations people are saying about me.  While seated, he place[d] his hands on the arm of the chair and lift[ed himself] up, lean[ed] into my face, and repeated[,] "I am tired of these accusations, and yes!, we want to fire you, so if[] you get another violation or accident, we are going to fire you."

Compl. at 2.

On or about October 7, 2015, plaintiff sought legal assistance at the D.C. Employment Justice Center.  *See id*., Ex. at 39-40.  Plaintiff informed its staff of the September 9, 2015 meeting with Mr. Taylor, and he was advised that he could "file a new EEO charge based on retaliation for engaging in protected EEOC activity (filing a charge)."  *Id*., Ex. at 40.  In addition, regarding the First Charge, plaintiff was advised that he had "90 days to file suit in federal . . . court," or by November 13, 2015.  *Id*., Ex. at 40.

On October 8, 2015, plaintiff filed a second charge of discrimination with the EEOC:

3

> On about October 2014, I was hired as a Bus Driver for Greyhound. On August 13, 2015, I filed EEOC Charge 570-2015-01678. On September 9, 2015, Manager Mark Taylor called me in to his office and yelled at me regarding my EEOC charge and threatened to fire me. Since October 3, 2015, I have been taken off the schedule.
>
> I believe I have been retaliated against for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.*, Ex. at 45 (Charge of Discrimination No. 570-2015-00051) ("Second Charge"). The EEOC issued a right-to-sue notice on October 19, 2015. *Id.*, Ex. at 25 (Dismissal and Notice of Rights, EEOC Charge No. 570-2015-00051).

Plaintiff submitted his resignation on or about October 31, 2015. He filed this lawsuit on December 23, 2015, and demands, among other relief, "financial compensation for lost income . . . and stress." *Id.* at 5.[3]

## II. DISCUSSION

### A. *Dismissal Under Federal Rule of Civil Procedure 12(b)(6)*

Greyhound construes the complaint, *see* Def.'s Mem. at 1, as one raising five claims: (1) discrimination based on sexual orientation in violation of 42 U.S.C. § 2000e-2; (2) retaliation in violation of 42 U.S.C. § 2000e-3; (3) wrongful termination in violation of public policy; (4) violation of Section 7 of the National Labor Relations Act ("NLRA"), *see* 29 U.S.C. § 157; and (5) constructive discharge in violation of Section 8(a)(3) of the NLRA, *see* 29 U.S.C. § 158(a)(3). It moves to dismiss all of plaintiff's claims under Federal Rule of Civil Procedure

---

[3] Plaintiff's original complaint bears a date stamp indicating that the Clerk of Court received it, along with an application to proceed *in forma pauperis*, on December 23, 2015. Although the Clerk of Court did not file these documents on CM/ECF until January 11, 2016, the Court treats the complaint as if it had been filed on December 23, 2015.

12(b)(6) on the ground that the complaint fails to state claims upon which relief can be granted. *See* Def.'s Mem. at 7-8.

A plaintiff need only provide a "short and plain statement of [his] claim showing that [he is] entitled to relief," Fed. R. Civ. P. 8(a)(2), and "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint, *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), and "not whether the plaintiff will prevail on the merits," *Woodruff v. DiMario*, 197 F.R.D. 191, 193 (D.D.C. 2000). In considering such a motion, the "complaint is construed liberally in the plaintiff['s] favor, and [the Court] grant[s] plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "[T]he [C]ourt need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint," *id.*, or "a legal conclusion couched as a factual allegation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted), or "naked assertions devoid of further factual enhancement," *id.*

A complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* Pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson*, 551 U.S. at 94 (internal quotation marks and citation omitted), and the Court considers the allegations set forth in plaintiff's complaint and in his other "filings, including filings responsive to a motion to dismiss," *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).

5

Nevertheless, even a *pro se* complaint "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct'" by the defendant. *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678-79).

### B.  Discrimination and Retaliation Claims

Under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), *see* 42 U.S.C. § 2000e *et seq.*, an employer may not "discriminate against an individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . sex. " 42 U.S.C. § 2000e-2(a)(1).  An aggrieved employee may file a charge of discrimination with the EEOC, *see* 42 U.S.C. § 2000e-5(b), and if subsequently he chooses to file a lawsuit in federal district court, he must do so within 90 days of receipt of the EEOC's right-to-sue notice, *see* 42 U.S.C. § 2000e-5(f)(1).  It is presumed that the EEOC mails each notice on the date of its issuance, and that the aggrieved employee receives the notice within three days.  *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (per curiam); *Jideani v. Washington Metro. Area Transit Auth.*, 979 F. Supp. 2d 77, 84 (D.D.C. 2013).  "Thus, in the typical case a [plaintiff] has 93 days from the date the EEOC issues a [notice] to file suit in federal court." *Olatunji v. District of Columbia*, 958 F. Supp. 2d 27, 30 (D.D.C. 2013).

The Court may dismiss a Title VII claim even if a plaintiff had missed his deadline by a single day.  *See Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007) (citations omitted). However, "[t]he 90-day period is not a jurisdictional prerequisite to filing suit in federal district court but operates as a statute of limitations[.]" *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998) (citations omitted).  It "is subject to . . . equitable tolling," *id.*, for example, which "allows a plaintiff to avoid the bar of the limitations period if despite all due

diligence he is unable to obtain vital information bearing on the existence of his claim," *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998) (citation omitted).

Greyhound moves to dismiss the discrimination and retaliation claims set forth in the First Charge on the ground that plaintiff failed to file this lawsuit timely. *See generally* Def.'s Mem. at 8-10. It posits that plaintiff would have received the EEOC's right-to-sue notice on Monday, August 19, 2015, that the 90-day period within which plaintiff was required to file this lawsuit ended on November 15, 2015, and that plaintiff failed to file his lawsuit by that date. *Id.* at 9. Absent any assertion of an "equitable consideration that would extend the 90-day filing deadline," Greyhound urges the Court to "dismiss [p]laintiff's claims arising out of the First Charge . . . because they are time barred." Def.'s Reply in Support of its Mot. to Dismiss Pl.'s Compl. and Opp'n to Pl.'s Mot. for Cert., ECF No. 15 ("Reply") at 3.

Plaintiff responds:

> The First Charge was sign[ed] on August 13, 2015 and the second charge was sign[ed] on October 19, 2015. These Charges were joint charges, because Retaliation was enter[ed] on both form[s] making the last charge the effective date for filing. The plaintiff was inform[ed] by the D.C. Employment Justice Center to file document[s] together, because Retaliation has occurred during the first charge. Plaintiff complaint was file[d] in court on December 23, 2015.

Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss Compl. and Mot. for Cert., ECF No. 13 ("Pl.'s Opp'n") at 4 (page numbers designated by ECF). He thus treats his two charges of discrimination as if they were a single matter, such that the timely filing with respect to the Second Charge cures the late filing with respect to the First Charge. He is mistaken. Even if the retaliation claims are "joint charges," each right-to-sue notice advised plaintiff of the 90-day period within which he must file a lawsuit.

7

Plaintiff's tardiness might be excused if he were able to demonstrate a basis for tolling the 90-day limitations period. Plaintiff acknowledges the filing of his complaint on December 23, 2015, Pl.'s Opp'n at 4, and other than the mistaken argument set forth above, he makes no further attempt to explain his failure to file this lawsuit on or before November 15, 2015. He cannot claim to have relied on erroneous or misleading advice from the D.C. Employment Justice Center, because its staff advised him to file his lawsuit even sooner, by November 13, 2015. *See* Compl., Ex. at 40. Any instruction plaintiff may have received "to file the document[s] together," *id.*, does not address his failure to heed the warning set forth in the right-to-sue notice itself, and the advice of counsel at the D.C. Employment Justice Center, to file his lawsuit within 90 days.

"The burden is on the plaintiff to demonstrate that equity demands forgiveness of a late filing, and where – as here – plaintiff 'offers no explanation at all' for his tardiness, that burden is not met." *Mack v. WP Co., LLC*, 923 F. Supp. 2d 294, 301 (D.D.C. 2013) (quoting *McAlister v. Potter*, 733 F. Supp. 2d 134, 143-44 (D.D.C. 2010)). The Court therefore grants Greyhound's motion in part and dismisses the retaliation and sex discrimination claims set forth in the First Charge. The retaliation claim stemming from the Second Charge is not time-barred, and it will survive Greyhound's motion.

"To establish a prima facie case of retaliation, a claimant must show that (1) [he] engaged in a statutorily protected activity; (2) [he] suffered a materially adverse action by [his] employer; and (3) a causal connection existed between the two." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citations omitted). It is clear that plaintiff engaged in protected activity by filing the First Charge. It matters not that the Court has dismissed the sex discrimination and retaliation claims set forth therein as untimely. *See Coats v. DeVos*, __ F. Supp. 3d __, __, 2017

WL 521500, at *10 (D.D.C. Feb. 8, 2017) (finding that EEOC complaint "constitutes protected activity for purposes of both Title VII and the ADEA" even though it "resulted in a finding of 'no discrimination with respect to any of [plaintiff's] allegations'"). Thus plaintiff establishes the first element of his prima facie case.

Title VII's anti-retaliation provision does not "protect[] an individual . . . from all retaliation, but from retaliation that produces an injury or harm." *Patzy v. Hochberg*, __ F. Supp. 3d __, __, 2016 WL 6635632, at *2 (D.D.C. Nov. 9, 2016) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). There must be "significant, tangible harm," *id.* (quoting *Walker v. Johnson*, 785 F.3d 1085, 1095 (D.C. Cir. 2015)), as there is no protection from "petty slights, minor annoyances, and simple lack of good manners," *Burlington N.*, 548 U.S. at 68. Accordingly, a materially adverse action in the context of a retaliation claim means an action that would "have dissuaded a reasonable worker from making . . . a charge of discrimination." *Id.* (internal quotation marks and citations omitted).

Plaintiff bases his retaliation claim on the September 9, 2015 meeting, during which Mr. Taylor yelled at him and, apparently with reference to the Last Chance Agreement, threatened to fire him "if[ he] got another violation or accident[.]" Compl. at 2. These allegations only indicate that plaintiff endured an unpleasant encounter with a manager. "[S]poradic verbal altercations or disagreements," *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008), or "mere 'trivial harms,' 'petty slights,' and 'minor annoyances,'" *Townsend v. United States*, __ F. Supp. 3d __, __, 2017 WL 727536, at *21 (D.D.C. Feb. 21, 2017) (quoting *Burlington N.*, 548 U.S. at 68), do not amount to *material* adverse actions, *see Brokenborough v. District of Columbia*, __ F. Supp. 3d __, __ No. 13-CV-1757, 2017 WL 663524, at *10 (D.D.C. Feb. 17, 2017) (finding that "single incidents of verbal taunts and mocking, eye-rolling and cursing" were

9

not materially adverse actions). Nor can plaintiff point to Mr. Taylor's purported threat of discipline or termination in the future as a materially adverse employment action. *See Valles-Hall v. Ctr. for Nonprofit Advancement*, 481 F. Supp. 2d 118, 144-45 (D.D.C. 2007) (finding that, absent assertion that employer "carried through with her alleged threat of termination and her mere threat, in and of itself, is not an adverse employment action"); *see also Lutkewitte v. Gonzales*, 436 F.3d 248, 271 (D.C. Cir. 2006) (Brown, J., concurring) ("Threats of future adverse actions (whether explicit or implicit) may culminate in a tangible employment action if carried out, but they do not themselves meet that standard.").

If the Court looks to submissions other than the complaint, however, plaintiff meets with success. The Second Charge mentions that plaintiff had been taken off the schedule. Compl., Ex. at 45. Plaintiff asserts that Greyhound "took [him] off the board, that is, the data base to know when you will be called" to work. Pl.'s Opp'n at 9. Further, he claims that Greyhound "suspended [him] for weeks of time without notice[]," and that he did not receive payment for work performed or for meals even though he filled out the proper forms. *Id.*

"Actions short of an outright firing can be adverse within the meaning of Title VII, but not all lesser actions by employers count." *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002). A suspension without pay might qualify as a materially adverse action, *see Román v. Castro*, 149 F. Supp. 3d 157, 172 (D.D.C. 2016) (noting that suspension "could qualify as a materially adverse action under D.C. Circuit precedent"), if, for example, the employee was not paid for that period of time, *see Dickerson v. SecTek, Inc.*, 238 F. Supp. 2d 66, 80 n.11 (D.D.C. 2002) (noting that "courts have almost uniformly held that a disciplinary suspension for which the employee is *not* compensated imposes a tangible harm to employment status and thus amounts to an adverse employment action"). A suspension and the denial of work hours or pay

might have dissuaded a reasonable employee from filing a charge of discrimination with the EEOC. Taken together, the Court finds plaintiff's assertions sufficient to make out the second element of the prima facie case.

With respect to causation, the third element, there are practically no factual allegations. The complaint describes the September 9, 2015 meeting, but otherwise does not mention suspension, lost pay, or being taken off the work schedule. Nor does the complaint itself allege any connection between the First Charge and an adverse action. The Second Charge states that plaintiff was taken off the schedule as of October 3, 2015, roughly five weeks after the September 9, 2015 meeting with Mr. Taylor and Ms. Durham. *See* Compl., Ex. at 45. Plaintiff's opposition to Greyhound's motion purportedly lists "some of the Adverse Action[s] that took place," Pl.'s Opp'n at 7, yet it is not at all clear when any of these actions occurred, or whether any allegedly resulted from plaintiff's protected activity.

Plaintiff does allege that his managers raised his EEO claims specifically at the September 9, 2015 meeting, Mr. Taylor expressed hostility about the EEO claims, and shortly thereafter, since October 3, 2015, plaintiff was taken off the schedule. These allegations are enough to suggest motivation, thus, causation. In light of the Court's obligation not only to construe the complaint liberally but also to take into account plaintiff's other filings, the Court concludes that plaintiff by the thinnest of margins establishes the third element of his prima facie retaliation claim. Therefore, the Court denies Greyhound's motion to dismiss the retaliation claim stemming from the Second Charge.[4]

---

[4] Plaintiff also refers to the October 19, 2015 right-to-sue notice, stating that he must "prove to the court that Title VII can be enter [sic] based on discrimination, or else, the EEOC would not [have] given me the right to sue." *Id*. at 6. Plaintiff appears to argue that the retaliation claim must be viable because the EEOC issued a right-to-sue notice. Not so. The right-to-sue notice marks the end of the EEOC's participation – based on the information available, it was unable to conclude that Greyhound violated Title VII – at which point plaintiff had the option of filing a lawsuit in federal court. It is not an endorsement of plaintiff's claim or proof that Greyhound retaliated against plaintiff.

*C. Wrongful Termination and Constructive Discharge Claims*

1. Preemption and the Labor-Management Relations Act

Plaintiff alleges that Greyhound constructively discharged him and terminated his employment in violation of public policy. *See* Compl. at 1, 3. Greyhound moves to dismiss these claims on the ground that they are preempted by federal law. *See* Def.'s Mem. at 10-11.

Section 301 of the Labor-Management Relations Act ("LMRA") provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 not only "confer[s] jurisdiction on federal courts to hear suits charging violations of collective-bargaining agreements," but also "authorize[s] federal courts to create a body of federal law for the enforcement of collective-bargaining agreements." *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 855 (1987) (citation omitted). Thus, where the resolution of a state law claim "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a [Section] 301 claim . . . or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (citations omitted)

Greyhound contends that plaintiff's wrongful termination and constructive discharge claims are preempted by Section 301 because their resolution necessarily requires the Court to interpret the CBA between it and the Union. *See* Def.'s Mot. at 10-11, 12-13. Plaintiff responds by asserting that Greyhound's "drivers are govern[ed] by [the] Driver's Rule Book," Pl.'s Opp'n at 4, particularly Section 2, titled Driver Behavior and Image, *see id.*, Ex. One (excerpt from Greyhound Driver's Rule Book) at 2-3. The Court presumes that plaintiff cites Section 2 of the

Driver's Rule Book because it contains an anti-discrimination provision. *See id*., Ex. One at 2 (Section 2-2) ("It is the policy of Greyhound to prohibit discrimination and harassment of any type and to afford equal treatment to all . . . employees regardless of . . . gender [or] sexual orientation[.]"). The CBA, too, prohibits "discrimination in hiring, promotion, or other aspects of employment because of . . . gender [or] sexual orientation[.]" Def.'s Mem., Ex. 1 at 16 (Article G-22). And, the Court notes, nothing in the Driver's Rule Book prevents Greyhound from disciplining or discharging an employee "for any violation or infraction of any Company rule, directive or order, bulletin or policy, or for violation of any federal, state/provincial, or local law or regulation." Pl.'s Opp'n, Ex. One (Section 1-2) at 2.

The issue here is not Greyhound's anti-discrimination policy. Rather, the question is whether Section 301 controls and, if so, whether this Court must dismiss plaintiff's wrongful termination and constructive discharge claims. Plaintiff's opposition is essentially silent on this point. The Court concludes that plaintiff's wrongful termination and constructive discharge claims are preempted by Section 301, as their resolution requires an analysis of the CBA's terms. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) (holding that "application of state law is pre-empted by § 301 of the [LMRA] only if such application requires the interpretation of a collective-bargaining agreement"); *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the West*, 366 F. Supp. 2d 33, 40 (D.D.C. 2005) ("In other words, state law is preempted by § 301 of the [LMRA] if its application requires the interpretation of a collective bargaining agreement.").

2.  CBA's Grievance Procedure

The CBA provides that an employee may be disciplined for just cause. Def.'s Mem., Ex. 1 at 8 (Article G-7). [5] It further provides that "[a]ll differences, disputes, suspensions, and discipline cases . . . between the parties arising out of [the CBA] will be handled" by a three-step grievance procedure. *Id.*, Ex. 1 at 9 (Article G-8). Greyhound moves to dismiss plaintiff's wrongful termination and constructive discharge claims on the ground that plaintiff had not exhausted the grievance procedure before filing this action. *See id*. at 13. Plaintiff's opposition is silent on this point; he neither alleges that he filed a grievance nor makes any argument that he is not bound by the CBA's terms regarding resolution of non-Title VII employment-related disputes.

"[W]here the [CBA] provides grievance . . . procedures, those procedures must first be exhausted" before a plaintiff may initiate a civil action against the employer. *Cefarrati v. JBG Properties, Inc.*, 75 F. Supp. 3d 58, 69 (D.D.C. 2014) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987)) (additional citation omitted). Because plaintiff has not exhausted the grievance procedure, his wrongful termination and constructive discharge claims will be dismissed. *See id.*; *Washington v. AlliedBarton Sec. Servs., LLC*, __ F. Supp. 3d __, __, 2016 WL 6775421, at *5 (D.D.C. Nov. 15, 2016) (where plaintiff "fails to plausibly identify any source of contractual right he seeks to vindicate that is independent of the CBA, the

---

[5] Ordinarily, if the Court relies on materials outside the pleadings, it converts a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). The Court declines to convert Greyhound's motion "simply because it refers to materials outside the pleadings" where, as here, Greyhound submits a copy of the CBA, plaintiff refers to his membership in a labor union and to his right to union representation, *see* Compl. at 4, and the CBA is "central to plaintiff['s] claims," *Krooth & Altman v. N. Am. Life Assur. Co.*, 134 F. Supp. 2d 96, 99 (D.D.C. 2001); *see Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). Plaintiff has not disputed the authenticity of the document.

Court determines that his claim is dependent on the CBA and is therefore preempted"), *appeal docketed*, No. 16-7147 (D.C. Cir. Dec. 5, 2016).

### D. Constructive Discharge Claim Under Section 8(a)(3) of the NLRA

Plaintiff alleges a constructive discharge claim, *see* Compl. at 4, under Section 8(a)(3) of the NLRA, which prohibits "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization," 29 U.S.C. § 158(a)(3). Specifically, he contends that Mr. Taylor "force[d] him to sign the Last Chance Agreement . . . or else[] get fired on the spot without representati[on] by a union [representative] as [he] request[ed]." Compl. at 4. Greyhound moves to dismiss this claim on the ground that the National Labor Relations Board ("NLRB"), not this federal district court, has subject matter jurisdiction over it. *See* Def.'s Mem. at 15.

Plaintiff mentions a "Section 8(a)(3) Unfair Labor Practice Claim" in his opposition, *see* Pl.'s Opp'n at 7, and presents neither an argument nor legal authority to show that his constructive discharge claim properly is brought in this court. "NLRB's jurisdiction is in general exclusive[, and] if a claim falls within [its] purview, state and federal courts are preempted from hearing it." *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty Maritime Corp.*, 815 F.3d 834, 839 (D.C. Cir. 2016). Therefore, the Court will grant Greyhound's motion to dismiss the constructive discharge claim for lack of jurisdiction.

*E. Failure to Represent Claim*[6]

Plaintiff's final claim, too, is under the NLRA. He alleges that his "union representative[] fail[ed] to meet with [him] on several grievances," that he "[f]alsif[ied] documents and [failed to maintain] a record of legal accountable documents," Compl. at 4, in violation of the NLRA. Greyhound is the sole defendant in this case, and the Court presumes that plaintiff attempts to bring his failure to represent claim as a "hybrid § 301/fair representation claim," *Cephas v. MVM, Inc.*, 520 F.3d 480, 485 (D.C. Cir. 2008) (citations omitted), "consist[ing] of two [intertwined] causes of action, one against the employer for breach of the CBA and the other against the union," *Jackson v. Teamsters Local Union 922*, 991 F. Supp. 2d 71, 81 (D.D.C. 2014) (internal quotation marks and citations omitted) (brackets in original). A viable hybrid claim requires a plaintiff to "show that "(1) the union breached its [duty of fair representation] and (2) the employer breached the CBA." *Id.* (quoting *Cephas*, 520 F.3d at 485) (brackets in original).

Greyhound moves to dismiss plaintiff's hybrid claim because the allegations set forth in the complaint "are utterly threadbare." Def.'s Mem. at 17. The Court concurs, and notes that plaintiff's opposition on this point is incomprehensible. He merely states that defendant's counsel "have enter redundancy statement toward the Plaintiffs' [sic] responsive [sic], making their case inconsisten[t] and incompetent evidence that is valid to prove this case." Pl.'s Opp'n

---

[6] The Court denies Greyhound's motion to dismiss the failure to represent claim as time-barred. A plaintiff must bring his claim within six months, 29 U.S.C. § 160(b), and the clock "begin[s] to run when the claimant 'discovers, or in the exercise of reasonable diligence should discover, the acts that form the basis of his claim,'" *Hollie v. Smith*, 813 F. Supp. 2d 214, 220 (D.D.C. 2011) (quoting *McConnell v. Air Line Pilots' Ass'n, Int'l*, 763 F. Supp. 2d 37, 41 (D.D.C. 2011)). Based on plaintiff's reference to the July 9, 2015 Last Chance Agreement he allegedly was forced to sign, *see* Compl. at 1, plaintiff was aware on that date of the union's breach of duty. Plaintiff filed this lawsuit on December 23, 2015, within the six-month limitations period.

at 8. Accordingly, the Court grants Greyhound's motion to dismiss the failure to represent claim because the complaint fails to allege sufficient facts to support it.

### III. CONCLUSION

The Court concludes that a single retaliation claim survives. Accordingly, Greyhound's motion to dismiss will be granted in part and denied in part.[7] An Order is issued separately.

                                      /s/
                                      RUDOLPH CONTRERAS
                                      United States District Judge

DATE: March 27, 2017

---

[7] In the event of an unfavorable ruling, plaintiff appears to have requested an opportunity to amend his complaint. *See* Pl.'s Opp'n at 10. The Court treats this request as a motion to amend his complaint. At this stage of the proceedings, plaintiff cannot amend his complaint as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). He has not obtained defendant's written consent or the Court's leave to file an amended complaint. *See* Fed. R. Civ. P. 15(a)(2). Lastly, plaintiff's motion neither complies with Local Civil Rule 7(*i*) nor otherwise indicates how he wishes to amend his complaint. For these reasons, plaintiff's motion to amend is denied.